**STURM, RUGER & COMPANY, INC., Appellant,**

v.

**Elaine CHAO, Secretary, U.S. Department of Labor and Charles N. Jeffress, Assistant Secretary of Labor for Occupational Safety and Health, Appellees.**

No. 01–5111.

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 2002.

Decided Aug. 23, 2002.

Richard D. Wayne argued the cause and filed the briefs for appellant.

Brian J. Sonfield, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, Eugene Scalia, Solicitor, U.S. Department of Labor, Joseph M. Woodward, Associate Solicitor, and Bruce Justh and Ronald J. Gottlieb, Counsel. Michael J. Ryan, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Sturm, Ruger & Company, Inc. filed a complaint in the United States District Court for the District of Columbia, challenging the Occupational Safety and Health Administration's Data Collection Initiative as unlawful. The court concluded that it lacked subject matter jurisdiction over the complaint, and that the company must pursue its claims through the review process prescribed by the Occupational Safety and Health Act. We agree.

I

We begin with a description of the statutory framework and of prior proceedings involving Sturm Ruger.

A

The Occupational Safety and Health Act (OSH Act) authorizes the Secretary of La-

bor to promulgate workplace safety and health standards, 29 U.S.C. § 655(b), as well as regulations "necessary or appropriate for the enforcement of [the Act] or for developing information regarding the causes and prevention of occupational accidents and illnesses," *id.* § 657(c)(1). It further directs the Secretary to "prescribe regulations requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses." *Id.* § 657(c)(2). And it gives the Secretary enforcement power, authorizing her to issue citations and to assess penalties for violations of the Act and of the standards and regulations promulgated thereunder. *Id.* §§ 658, 659. The Secretary has delegated the bulk of these statutory responsibilities and authorities to the Occupational Safety and Health Administration (OSHA).

While the OSH Act charges the Secretary with rulemaking and enforcement, it gives the task of "carrying out adjudicatory functions" to an independent entity, the Occupational Safety and Health Review Commission (OSHRC or the Commission). *Id.* § 651(b)(3); *see Martin v. OSHRC*, 499 U.S. 144, 147, 111 S.Ct. 1171, 1174, 113 L.Ed.2d 117 (1991) (explaining that the OSH Act "assigns distinct regulatory tasks to two different administrative actors").

Under the Act, employers may contest OSHA citations before OSHRC. 29 U.S.C. § 659(c). Such contests are heard first by an ALJ, whose decision becomes the final order of the Commission unless the Commission decides to hear the case. *Id.* § 661(j). Both employers and the Secretary may seek review of OSHRC orders in the courts of appeals. *Id.* § 660(a), (b).[1]

In 1996, OSHA launched an annual survey called the Data Collection Initiative (DCI). *See* 62 Fed.Reg. 6434, 6434 (Feb. 11, 1997). Under the DCI, OSHA requires selected employers to report the number of workers they employed and the number of hours their employees worked during a specified period, as well as the number of work-related injuries and illnesses their employees suffered during that period. *See, e.g.,* OSHA Data Collection Form for Occupational Injuries and Illnesses, 2000 (J.A. at 67). From this information, OSHA calculates injury/illness incidence rates, which it uses to identify establishments to target for inspection. *See* 62 Fed.Reg. at 6435; *Secretary of Labor v. Sturm, Ruger & Co.*, OSHRC Nos. 99–1873 & 99–1874 (ALJ Order Den. Mot. to Suppress, July 5, 2000) [hereinafter July 2000 ALJ Order] (noting that OSHA uses the DCI to target "sites in high-hazard industries with average or above rates of injury and illness").[2]

---

1. A person adversely affected by a Commission order may obtain review in "any United States court of appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office, or in the Court of Appeals for the District of Columbia Circuit." 29 U.S.C. § 660(a).

2. When the DCI was first implemented in 1996, OSHA had in effect regulations requiring employers to maintain logs of work-related injuries and illnesses, 29 C.F.R. § 1904.2, and to provide these logs to OSHA upon its request, *id.* § 1904.7. OSHA did not, however, have a regulation that required employers

to respond to the DCI survey. Several employers filed suit against the Secretary, seeking an injunction against its implementation. *See American Trucking Ass'ns, Inc. v. Reich*, 955 F.Supp. 4 (D.D.C.1997). In January 1997, the district court granted summary judgment for the employers, holding that OSHA "must promulgate a regulation before purporting to command employers to file reports like the one at issue here." *Id.* at 7. The Secretary did not appeal that decision, and the next month, to "clarify OSHA's authority," OSHA adopted 29 C.F.R. § 1904.17, which we discuss below. *See* 62 Fed.Reg. 6434, 6434 (Feb. 11, 1997). Since the filing of Sturm Ruger's complaint, OSHA has re-

## B

In April 1997, OSHA sent Sturm Ruger a DCI survey, requiring it to provide information regarding its Pine Tree Castings Division, a New Hampshire facility that manufactures steel investment castings. Sturm Ruger complied and returned the completed survey to OSHA. In June 1998, based on information in the survey, two OSHA compliance officers arrived at Pine Tree to inspect the facility. *See* 29 U.S.C. § 657(a) (providing that the Secretary may enter, inspect, and investigate workplaces as necessary to "carry out the purposes of [the Act]"). Sturm Ruger refused to consent to the inspection, prompting OSHA to obtain a search warrant from the United States District Court for the District of New Hampshire. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311, 98 S.Ct. 1816, 1819–20, 56 L.Ed.2d 305 (1978) (holding that OSHA must obtain a warrant to conduct nonconsensual inspections of business premises). When OSHA officers arrived to execute the warrant, Pine Tree employees prevented them from doing so. On the same day, Sturm Ruger moved to quash the warrant, arguing that the data used to target Pine Tree for inspection was derived from a survey that was not authorized by regulation, and that the warrant violated the Fourth Amendment.

On January 22, 1999, the district court denied the motion to quash and enforced the warrant. *Sturm, Ruger & Co. v. United States*, No. Civ. 98–418–JD, 2000 WL 36931, at *11 (D.N.H. Jan. 22, 1999). Sturm Ruger appealed to the United States Court of Appeals for the First Circuit, and sought a stay of execution of the warrant pending appeal. The First Circuit denied the stay, and OSHA executed the warrant. After inspecting the Pine Tree facility, OSHA announced that it was considering issuing citations for violations of safety and health standards discovered during the inspection. *Sturm, Ruger & Co. v. OSHA*, 186 F.3d 63, 63 (1st Cir. 1999).

In August 1999, the First Circuit dismissed Sturm Ruger's appeal for failure to exhaust administrative remedies. Noting that the OSHA inspection had already occurred and that citations could soon issue, the court of appeals held that Sturm Ruger had to pursue its challenge by contesting the citations through the review process established by the OSH Act. The court noted that this process "would involve initial review by an administrative law judge, discretionary review by the Occupational Safety and Health Review Commission, and eventual review by this court." *Id.* at 63 (citing 29 U.S.C. §§ 659–61).

The First Circuit reached its conclusion notwithstanding Sturm Ruger's insistence that its claim "involve[d] a 'purely legal' issue consisting of a 'facial' challenge" to the DCI. *Id.* at 64. The court found that Sturm Ruger had "not suggested that its claims cannot be adequately adjudicated in the ... anticipated enforcement proceeding," *id.* (internal quotation marks omitted), and that in fact "a successful appeal following exhaustion of administrative remedies" would vindicate its rights, *id.* at 65. Moreover, the court held that, while the company had "not shown that requiring exhaustion would subject it to irreparable harm," permitting the district court to hear the claim would interfere with "agency autonomy." *Id.* at 64–65.

On September 2, 1999, OSHA issued citations to Sturm Ruger based on its inspection of the Pine Tree facility. In accordance with the OSH Act's review provisions, the company contested those

vised 29 C.F.R. pt.1904, and the regulation concerning the DCI now appears at 29 C.F.R. § 1904.41. *See* 66 Fed.Reg. 5916 (Jan. 19, 2001).

citations before an ALJ appointed by OSHRC. *See* 29 U.S.C §§ 659(c), 661(j). At the outset of the proceeding, Sturm Ruger moved to suppress the evidence obtained during the Pine Tree inspection, arguing that no regulation authorized OSHA to collect the survey data that it used to target employers for inspection, and that the use of the data violated the Fourth Amendment. The ALJ denied the motion on the ground that, by responding to the survey, Sturm Ruger had waived the right to challenge its legality. July 2000 ALJ Order at 4.

After the ALJ issued a final decision on the merits, Sturm Ruger petitioned for, and the Commission granted, discretionary review. Sturm Ruger's petition argued that the citations should be vacated because they were discovered in an inspection based on data collected through an unlawful and unconstitutional survey. Pet. for Discretionary Review ¶ 15, *reprinted in Secretary of Labor v. Sturm, Ruger & Co.*, OSHRC Nos. 99–1873 & 99–1874, 2001 WL 95794 (ALJ Final Order, Jan. 23, 2001). The DCI was unlawful under the OSH Act and the Administrative Procedure Act (APA), 5 U.S.C. § 706, the company contended, because no regulation required employers to maintain the data sought by the survey. *Id.* ¶¶ 4, 7. And it was unconstitutional because Sturm Ruger had "a privacy interest protected by the Fourth Amendment in the information that the survey form compelled it to produce." *Id.* ¶ 23. Sturm Ruger's case is currently pending before the Commission.

## C

On May 9, 2000, two months before the ALJ denied its motion to suppress, Sturm Ruger filed a complaint against the Secretary of Labor and the Assistant Secretary responsible for OSHA in the United States District Court for the District of Columbia. *Sturm, Ruger & Co. v. Herman*, 131 F.Supp.2d 211 (D.D.C.2001). Like its filings before the Commission, the company's complaint alleged that the DCI was unlawful under the OSH Act, the APA, and the Fourth Amendment. It sought both a declaratory judgment and an injunction barring OSHA from compelling compliance with the DCI survey, from conducting inspection programs that rely on survey data, and from "pursuing enforcement proceedings under the unlawful targeting inspection programs." Compl. at 13–14.

In its complaint, Sturm Ruger made the same argument now pending before the Commission: that the DCI was invalid because it required employers to report employment data (the number of employees and the hours they worked) despite the alleged absence of a regulation requiring employers to create and maintain such data. The company rested its argument on a section of the OSH Act that states:

> On the basis of the records made and kept pursuant to section 657(c) of this title, employers shall file such reports with the Secretary as he shall prescribe by regulation. . . .

29 U.S.C. § 673(e). Sturm Ruger did not dispute that OSHA had satisfied the requirement of the final clause of the section with 29 C.F.R. § 1904.17, a regulation that requires employers to file reports in response to annual DCI surveys.[3] But it argued that the first clause of the section only permits the agency to compel employers to provide information that is con-

---

**3.** Each employer shall, upon receipt of OSHA's Annual Survey Form, report to OSHA ... the number of workers it employed and the number of hours worked by its employees for periods designated in the Survey Form and such information as OSHA may request from records required to be created and maintained pursuant to 29 C.F.R. Part 1904.

29 C.F.R. § 1904.17.

tained in "records made and kept pursuant to section 657(c)." Section 657(c), in turn, provides:

> Each employer shall make, keep and preserve, and make available to the Secretary ..., such records regarding his activities relating to this chapter as the Secretary ... may prescribe by regulation....

29 U.S.C. § 657(c)(1). Sturm Ruger claimed that, although OSHA had a regulation requiring employers to create and maintain the injury and illness data sought by the DCI survey, 29 C.F.R. § 1904.2, no regulation required them to create and maintain the employment data also demanded by the survey. Thus, the company argued, the DCI's requirement that employment data be reported was unlawful under the OSH Act, §§ 657(c) & 673(e), and consequently under the APA because it was not "in accordance with law," 5 U.S.C. § 706(2).[4] Finally, like its pleadings before the Commission, Sturm Ruger's complaint also contended that employers "have a privacy interest protected by the Fourth Amendment in the information that the survey form seeks to compel them to produce." Compl. ¶ 40.

The Secretary of Labor moved to dismiss Sturm Ruger's complaint on the ground that "the administrative review process established by the OSH Act is the exclusive means by which plaintiff may challenge the DCI's legality." *Sturm, Ruger & Co.*, 131 F.Supp.2d at 215. The district court agreed and granted the motion. Applying the holding and reasoning of the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the

court concluded that the OSH Act established a comprehensive review procedure that precluded district court jurisdiction.

## II

■ On appeal, we review de novo the dismissal of Sturm Ruger's complaint for lack of subject matter jurisdiction, and must accept the factual allegations in the complaint as true. *See Sloan v. United States Dep't of Hous. and Urban Dev.*, 236 F.3d 756, 759 (D.C.Cir.2001). We first consider whether the OSH Act has a statutory review structure like that of the statute at issue in *Thunder Basin*, the Federal Mine Safety and Health Amendments Act of 1977 (Mine Act), 30 U.S.C. § 801 *et seq.* We then address whether Sturm Ruger's claims "are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212, 114 S.Ct. at 779.

## A

In *Thunder Basin*, the Supreme Court considered a pre-enforcement challenge filed by a mine operator against the Secretary of Labor. The operator's employees had selected two employees of the United Mine Workers, who were not employees of the mine, to serve as their miners' representatives under § 813(f) of the Mine Act. Thereafter, the Mine Safety and Health Administration (MSHA) of the Department of Labor instructed the operator to post the employees' designated representatives, as required by the statute and a MSHA regulation. Instead, the operator filed suit in federal district court for an injunction against enforcement of the reg-

---

4. Sturm Ruger does not dispute that OSHA has mooted this argument for DCI surveys applicable to years beginning after January 1, 2002. Appellant's Br. at 17 n.1, 29. As the company points out, OSHA has promulgated regulations, effective as of that date, "which now require employers to create and maintain the DCI Survey data" regarding the number of employees and the hours they worked for each establishment. *Id.* at 17 n. 1 (citing 29 C.F.R § 1904.32 (2002); 66 Fed.Reg. 5916, 6042 (Jan. 19, 2001)).

ulation, contending that designation of nonemployee union representatives violated its rights under the National Labor Relations Act (NLRA), 29 U.S.C. § 141 *et seq.* The operator also argued that requiring it to challenge MSHA's interpretation of the statute and regulation through the Mine Act's statutory review process would violate the Due Process Clause of the Fifth Amendment, because it would force the operator to choose between violating the Act and incurring penalties, or complying and thereby suffering irreparable harm. *Thunder Basin,* 510 U.S. at 205, 114 S.Ct. at 775.

The Court held that the statutory review scheme of the Mine Act deprived the district court of subject matter jurisdiction over the operator's complaint. It declared that "[i]n cases involving delayed judicial review"—that is, where appeal can be taken to the court of appeals after completion of administrative proceedings—"we shall find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'" *Id.* at 207, 114 S.Ct. at 776 (quoting *Block v. Community Nutrition Inst.,* 467 U.S. 340, 351, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984)). The Court found that intent discernible in the following elements of the Mine Act's statutory review procedure.

First, the Court noted that the "Act establishes a detailed structure for reviewing violations" of MSHA standards and regulations. *Id.* The Mine Act gives a mine operator thirty days to challenge before the Commission any citation issued by MSHA, after which time an uncontested order becomes "'final'" and "'not subject to review by any court or agency.'" *Id.* (quoting 30 U.S.C. § 815(a), (d)). Challenges filed within the thirty–day period "are heard before an administrative law judge (ALJ), with possible Commission review" to follow. *Id.* at 207–08, 114 S.Ct. at

776 (citation omitted). "Only the Commission has authority actually to impose civil penalties proposed by the Secretary, and the Commission reviews all proposed civil penalties *de novo.*" *Id.* at 208, 114 S.Ct. at 776–77 (citations omitted).

The Court further noted that under the Act, "[m]ine operators may challenge adverse Commission decisions in the appropriate court of appeals, whose jurisdiction 'shall be exclusive and its judgment and decree shall be final' except for possible Supreme Court review." *Id.* (quoting 30 U.S.C. § 816(a)(1)). Courts of appeals must "uphold findings of the Commission that are substantially supported by the record." *Id.* (citation omitted). In addition, "the statute establishes that the Commission and the courts of appeals have exclusive jurisdiction over challenges to agency enforcement proceedings," and its "comprehensive review process does not distinguish between pre-enforcement and post-enforcement challenges, but applies to all violations of the Act and its regulations." *Id.* at 208–09, 114 S.Ct. at 777 (citation omitted). Finally, the "Act expressly authorizes district court jurisdiction in only two provisions ..., which respectively empower the *Secretary* to enjoin habitual violations of health and safety standards and to coerce payment of civil penalties." *Id.* at 209, 114 S.Ct. at 777 (citations omitted). "Mine operators," by contrast, "enjoy no corresponding right but are to complain to the Commission and then to the court of appeals." *Id.*

In the instant case, the district court concluded, and we agree, that "[t]he administrative and judicial review procedures in the OSH Act are 'nearly identical' to those in the Mine Act." 131 F.Supp.2d at 216 (quoting *In re Establishment Inspection of Manganas Painting Co.,* 104 F.3d 801, 802 (6th Cir.1997)). This is hardly surprising since, as we have previously

noted, the Mine Act's review process was written to conform to the review process of the OSH Act. *See Kaspar Wire Works, Inc. v. Secretary of Labor,* 268 F.3d 1123, 1131 (D.C.Cir.2001); *see also* 123 CONG. REC. 4387–88 (1977) (statement of Sen. Williams, the Act's sponsor, upon introduction of the Act). Like the Mine Act, the OSH Act gives employers a limited period to contest a citation issued by OSHA, and provides that if no contest is brought within that period, the citation is "deemed a final order ... not subject to review by any court or agency." 29 U.S.C. § 659(a). Contests to OSHA citations are brought before an independent adjudicatory commission (OSHRC), where they are heard first by an ALJ and then reviewed by the Commission, at its discretion. *Id.* §§ 659(c), 661(j). Only the Commission has authority to impose civil penalties proposed by the Secretary, which the Commission reviews de novo. *Id.* § 666(j).

As under the Mine Act, employers may appeal adverse Commission decisions to the appropriate court of appeals, whose jurisdiction "shall be exclusive and its judgment and decree shall be final," but which must uphold the Commission's findings of fact if "supported by substantial evidence." *Id.* § 660(a); *see supra* note 1.

And like the Mine Act, the OSH Act does not distinguish between pre- and post-enforcement challenges. Finally, also ·like the Mine Act, the OSH Act expressly grants district courts jurisdiction over specified actions, *see* 29 U.S.C. §§ 657(b), 660(c)(2), 662(a) & (d), 666(*l*), but those do not include actions brought by employers.

In short, in every relevant respect the statutory review provisions of the OSH Act parallel those of the Mine Act, and we therefore join the First and Sixth circuits in concluding that *Thunder Basin*'s analysis of review under the Mine Act is fully applicable to the OSH Act. *See Manganas Painting Co.,* 104 F.3d at 803; *Northeast Erectors Ass'n of the BTEA v. Secretary of Labor,* 62 F.3d 37, 40 (1st Cir. 1995).[5]

**B**

██ Our conclusion that the OSH Act creates a comprehensive review process comparable to that of the Mine Act's does not end the inquiry. We must also consider whether Sturm Ruger's claims "are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin,* 510 U.S. at 212, 114 S.Ct. at 779. In *Thunder Basin,* the Court indicated that district courts could still assert juris-

---

5. Sturm Ruger suggests that this conclusion is "implicitly" inconsistent with our decision in *Workplace Health & Safety Council v. Reich,* 56 F.3d 1465 (D.C.Cir.1995). *See* Appellant's Br. at 41. In that case, the petitioner sought pre-enforcement review of an OSHA rule in this court, and we therefore had to decide whether the rule was a "standard," the only kind of OSHA action that the OSH Act expressly authorizes courts of appeals to review directly. *See* 29 U.S.C. § 655(f). We held that the rule was a "regulation" rather than a "standard," and that we therefore did not have jurisdiction. *Workplace Health,* 56 F.3d at 1467–68. At the same time, we stated our belief that pre-enforcement review of regulations was appropriate in the district court. *Id.* at 1469. And in a subsequent case, in the course of deciding that we had original juris-

diction over an OSHA standard, we cited *Workplace Health* for the proposition that regulations are subject to review in the district court. *Chamber of Commerce v. Dep't of Labor,* 174 F.3d 206, 209 (D.C.Cir.1999). Neither *Workplace Health* nor *Chamber of Commerce,* however, mentioned *Thunder Basin* or considered its impact on district court jurisdiction. And as the Supreme Court has "repeatedly held," "the existence of unaddressed jurisdictional defects" gives a ruling "no precedential effect" on the unaddressed question. *Lewis v. Casey,* 518 U.S. 343, 352 n. 2, 116 S.Ct. 2174, 2180 n. 2, 135 L.Ed.2d 606 (1996); *see Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 91, 118 S.Ct. 1003, 1011, 140 L.Ed.2d 210 (1997); *Hagans v. Lavine,* 415 U.S. 528, 534–35 n. 5, 94 S.Ct. 1372, 1377–78 n. 5, 39 L.Ed.2d 577 (1974).

diction over "claims considered wholly collateral to a statute's review provisions and outside the agency's expertise." *Id.* at 212, 114 S.Ct. at 779 (internal quotation marks omitted). That is "particularly" so, the Court said, "where a finding of preclusion could foreclose all meaningful judicial review." *Id.* at 212–13, 114 S.Ct. at 779. Sturm Ruger's claims, however, do not fit within those categories.

Like the statutory claims at issue in *Thunder Basin,* Sturm Ruger's claim that the DCI violates the OSH Act because it is not authorized by regulation is not "wholly collateral" to the OSH Act's review provisions. *Id.* at 214, 114 S.Ct. at 780. Rather, it "require[s] interpretation of the parties' rights and duties" under the Act and its regulations, and therefore "fall[s] squarely within the Commission's expertise." *Id.* at 214, 114 S.Ct. at 779; *see Martin,* 499 U.S. at 154–55, 111 S.Ct. at 1177–78. As for the company's claim that the DCI violates the Fourth Amendment, we note that the same factors that persuaded the *Thunder Basin* Court that the constitutional challenge at issue there should be raised within the statutory review structure are present here: (1) "the reviewing body is not the agency itself but an independent Commission"; (2) the Commission has addressed constitutional claims in previous enforcement proceedings, *see, e.g., McLaughlin v. Kings Island,* 849 F.2d 990 (6th Cir.1988) (reviewing an OSHRC decision that an OSHA regulation authorizing a warrantless and nonconsensual search of business records violated the Fourth Amendment); and (3) the employer's claims can still "be meaningfully addressed in the Court of Appeals" after the Commission has rendered a decision. *Thunder Basin,* 510 U.S. at 215, 114 S.Ct. at 780.

In light of these considerations, we find Sturm Ruger's invocation of the Supreme Court's opinion in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), inapposite. *Leedom* involved a union's challenge to a determination by the National Labor Relations Board that a bargaining unit including both professional and nonprofessional employees was appropriate—despite a directly contrary provision of the NLRA. *Id.* at 185–86, 79 S.Ct. at 182–83; *see* 29 U.S.C. § 159(b)(1). Although the Court had previously held that a Board order in a certification proceeding was not "a final order" and therefore "not subject to judicial review except as it may be drawn in question by a petition for ... review of an order ... restraining an unfair labor practice," it nonetheless held that the district court had jurisdiction over the union's challenge. *Leedom,* 358 U.S. at 187, 191, 79 S.Ct. at 183, 185. "Central" to the decision in *Leedom,* the Court has since explained, was the understanding that barring district court review would have "wholly deprive[d] the union of a meaningful and adequate means of vindicating its statutory rights," because the union's members had " 'no other means, within their control' " of obtaining judicial review. *Board of Governors v. MCorp Fin., Inc.,* 502 U.S. 32, 43, 112 S.Ct. 459, 466, 116 L.Ed.2d 358 (1991) (quoting *Leedom,* 358 U.S. at 190, 79 S.Ct. at 185); *see Thunder Basin,* 510 U.S. at 213, 114 S.Ct. at 779 (citing *Leedom* as an example of a case in which the plaintiff had no other means to protect its rights).

As we have just discussed, however, barring district court review in this case will not deprive employers of the opportunity to obtain judicial review. An employer can, for example, refuse to answer the survey, draw a citation from OSHA, and then contest the citation through the statutory review procedure that ultimately ends in a court of appeals. *See Thunder Basin,* 510 U.S. at 216, 114 S.Ct. at 781. Sturm Ruger contends that this review option is not meaningful because, faced with the threat of OSHA sanctions, employers will

not risk ignoring the survey.[6] But the Court rejected a similar argument in *Thunder Basin*, noting that "[a]lthough the Act's civil penalties unquestionably may become onerous if petitioner chooses not to comply, the Secretary's penalty assessments become final and payable only after full review by both the Commission and the appropriate court of appeals." *Id.* at 218, 114 S.Ct. at 781–82 (citing 30 U.S.C. §§ 820(i) & 816); *see* OSH Act, 29 U.S.C. §§ 666(j) & 660. Moreover, in this case Sturm Ruger has already triggered the review process that ultimately will bring it to a court of appeals, by contesting the citations its Pine Tree facility received as the allegedly tainted product of a search based on information obtained through the DCI.[7]

Finally, we consider our recent decision in *National Mining Ass'n v. Department of Labor*, 292 F.3d 849, 856–57 (D.C.Cir. 2002), in which this court held that, notwithstanding the rule of *Thunder Basin*, a district court had jurisdiction to hear a "generic" challenge to regulations issued by the Secretary of Labor under the Black Lung Benefits Act (BLBA), 30 U.S.C. § 901 *et seq.* That decision is inapplicable to Sturm Ruger's challenge for three reasons.

First, *National Mining Association* emphasized that the challenge at issue there was a direct attack on the validity of "a formal regulation," issued pursuant to "notice-and-comment" rulemaking. *National Mining Ass'n*, 292 F.3d at 858. In so holding, we distinguished *Compensation Department v. Marshall*, in which the Third Circuit held that a district court lacked jurisdiction to review a claim that the Secretary's policy of independently examining x-rays submitted by those seeking black lung benefits was unlawful under the BLBA. 667 F.2d 336, 340–44 (3d. Cir. 1981). That case, we explained, involved an attack on an enforcement policy rather than a regulation, and "there was no reason why the [plaintiff] could not challenge [the] policy in an individual adjudication before the Benefits Review Board and, if necessary, in the Court of Appeals." *National Mining Ass'n*, 292 F.3d at 858.

The same is true here. As we described in Part I.C, Sturm Ruger does not challenge the validity of an OSHA regulation. To the contrary, it insists that there is *no* regulation that authorizes the collection of the employment information demanded by the DCI, and that the survey is therefore *ultra vires*. *See* Appellant's Br. at 16, 18, 34.[8] Moreover, as in *Compensation De-*

---

**6.** Sturm Ruger also appears to make the opposite argument, contending that OSHA is attempting to shield the DCI from review by choosing not to cite employers who fail to respond. But if that were the case, a point OSHA disputes, employers that fail to answer the survey would suffer no injury.

**7.** In a footnote, Sturm Ruger suggests that it cannot receive meaningful review through the statutory process because the ALJ held that, by voluntarily responding to the survey, the company had waived its right to challenge it. *See* Appellant's Br. at 39 n.11. But the ALJ's decision does not preclude the Commission, or the court of appeals upon subsequent review, from rejecting the ALJ's decision and accepting Sturm Ruger's contention that the

"waiver" was involuntary because its response to the survey was coerced. On the other hand, if both the Commission and court conclude that the company did voluntarily answer the survey, then its injury will have been due to its own voluntary action, and it will lack standing to complain. *See Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997).

**8.** *See, e.g.,* Appellant's Br. at 25 ("Because no OSHA regulation requires maintenance of such data, there can be no requirement to report said information [and] [t]herefore, the Annual DCI Surveys are an unlawful exercise of authority by OSHA. . . ."); *id.* at 34 ("[A]t all times relevant to the Complaint, there has been *no regulation* . . . requiring employers to

*partment,* the gravamen of Sturm Ruger's complaint is that OSHA is employing an unlawful enforcement strategy, in which it "use[s] the information gained through the survey form to target its enforcement activities on employer establishments." Compl. ¶ 10; *see id.* at ¶¶ 1, 32.[9] As we said in *National Mining Association* regarding *Compensation Department,* there is no reason why Sturm Ruger cannot challenge the Secretary's enforcement strategy in an individual adjudication before the Commission. *See National Mining Ass'n,* 292 F.3d at 858.

Second, we noted in *National Mining Association* that the regulations there at issue were "challenged primarily on the ground that they are impermissibly retroactive," that to determine whether that was true would require analysis of "all of the regulations together as well as the entire rulemaking process," and that such an analysis "would not be feasible in individual adjudications dealing with particular regulatory provisions." *Id.* at 858–59. By contrast, as we have discussed above, there is no reason why Sturm Ruger cannot obtain meaningful review of its challenge through the statutory review process.

Third, and most important, *National Mining Association* was not a case in which the "plaintiff sought to short-circuit the administrative process" through the vehicle of a district court complaint. *Id.* at 858. Sturm Ruger's complaint, however, fits that description well. As the district court noted, the company "raised the identical claims in its challenge to the citations that is currently pending before the OSHRC." 131 F.Supp.2d at 217 n. 1; *see* Pet. for Discretionary Review ¶¶ 4, 7, 15, 23; *supra* Part I.B. Moreover, it raised similar claims before the First Circuit, and was directed by that court to exhaust its remedies before the Commission. *Sturm, Ruger & Co.,* 186 F.3d at 63. Rather than allowing the statutory review process to run its course—a course that will eventually lead back to a court of appeals—Sturm Ruger sought to make an end run around that process by going directly to district court. Indeed, the company is attempting to end the process altogether: its complaint seeks an injunction permanently barring the Secretary from "pursuing enforcement proceedings under the unlawful targeting inspection programs," Compl. at 14, an injunction that would terminate the proceeding currently pending before the Commission. Our obligation to respect the review process established by Congress bars us from permitting Sturm Ruger to make this end run, and requires dismissal of its district court complaint.[10]

---

create and maintain the data which OSHA requires employers to report on the DCI concerning number of employees and number of hours worked by employees in establishments."). In particular, Sturm Ruger does not contend that 29 C.F.R. § 1904.17 unlawfully requires employers to report employment information that OSHA has not separately required the employers to create and maintain. Rather, it contends that § 1904.17 "merely authorizes OSHA to collect such data which OSHA requires employers to maintain by regulation and no such regulation requires this data to be maintained." Compl. ¶ 36.

9. *See also* Compl. at 13–14 (seeking a declaratory judgment that OSHA's "site specific targeting plans utilizing [DCI] data [are] ultra

vires," and an injunction "enjoin[ing] Defendants from conducting inspection programs which . . . rely upon" DCI data).

10. *See Thunder Basin,* 510 U.S. at 216, 114 S.Ct. at 781 (holding that Congress did not intend "to allow mine operators to evade the statutory review process"); *Northeast Erectors Ass'n of the BTEA,* 62 F.3d at 40 (dismissing a pre-enforcement challenge that would "subvert Congress's intent to have such claims reviewed through the OSH Act's detailed administrative procedure"); *cf. Great Plains Coop v. CFTC,* 205 F.3d 353, 354–55 (8th Cir.2000) (applying *Thunder Basin* to the Commodity Exchange Act, and holding that the plaintiff could not "make an 'end run' around the statutory [review] scheme" by fil-

## III

For the foregoing reasons, the judgment of the district court, dismissing the complaint for lack of subject matter jurisdiction, is

*Affirmed.*

ing a district court complaint aimed at "halting the CFTC's administrative proceedings against" the plaintiff); *Blocksom & Co. v. Marshall,* 582 F.2d 1122, 1124 (7th Cir.1978) (holding that an employer may not "bypass the review procedures Congress" established under the OSH Act by filing, at the same time that it was contesting a safety citation before OSHRC, a district court complaint "assert[ing] its defenses to the Secretary's citations").