376 F.3d 239
 NATIONAL TAXPAYERS UNION, Plaintiff-Appellant,
v.
UNITED STATES SOCIAL SECURITY ADMINISTRATION; Kathy A. Buller, in her official capacity as Chief Counsel to the Inspector General of the United States Social Security Administration, Defendants-Appellees.
 No. 03-2232.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 7, 2004.
 Decided: July 15, 2004.
 
 Appeal from the United States District Court for the District of Maryland, William M. Nickerson, Senior District Judge.
 ARGUED: Michael Edward Geltner, Geltner & Associates, Washington, D.C., for Appellant.
 Tara Leigh Grove, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Appellees.
 ON BRIEF: Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C.; Thomas M. DiBiagio, United States Attorney, Office of the United States Attorney, Baltimore, Maryland; Mark B. Stern, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Appellees.
 Before WILKINSON, LUTTIG, and SHEDD, Circuit Judges.
 Affirmed by published opinion. Judge SHEDD wrote the opinion, in which Judge LUTTIG joined. Judge WILKINSON wrote a concurring opinion.
 SHEDD, Circuit Judge:
 
 
 1
 This appeal presents the question whether the National Taxpayers Union may challenge the constitutionality of § 1140 of the Social Security Act, 42 U.S.C. § 1320b-10, in federal district court before the Social Security Administration undertakes administrative proceedings to enforce that provision against NTU. We hold that it may not. Under Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the district court lacks jurisdiction over NTU's pre-enforcement challenge to the statute.
 
 I.
 
 2
 The National Taxpayers Union ("NTU") is a non-profit organization engaged in research, education, and public advocacy concerning issues that it considers important to American taxpayers. One such issue is the financial stability of the Social Security program. As part of its campaign to reform the Social Security program, NTU distributed a mass mailing comprised of a letter and a survey. In the letter, NTU argued that the Social Security program is in a dire financial condition and desperately in need of structural reform. The survey posed eight questions seeking respondents' reactions to the current condition of the Social Security program as well as NTU's favored reform, personal investment accounts. Both the letter and the survey solicited financial contributions for NTU. The mailing was marked, "OFFICIAL NATIONAL SURVEY ON SOCIAL SECURITY COMMISSIONED BY THE NATIONAL TAXPAYERS UNION FOR THE SOCIAL SECURITY ADMINISTRATION, WHITE HOUSE AND CONGRESS OF THE UNITED STATES." The enclosed survey was titled, "OFFICIAL SURVEY ON SOCIAL SECURITY." The Social Security Administration ("SSA") advised NTU that its mailing violated § 1140 of the Social Security Act. Section 1140 prohibits the use of the words "Social Security" or certain related words in connection with any advertisement, solicitation, or other communication in a manner that conveys or could reasonably be construed as conveying the false impression that such advertisement or solicitation is approved, endorsed, or authorized by the SSA or other government agencies. 42 U.S.C. § 1320b-10(a)(1). The SSA requested that NTU cease distribution of its surveys.
 
 
 3
 NTU initially indicated that it would change the design of its mailing to comply with the statute. The revised mailing contained the following language: "OFFICIAL NATIONAL SURVEY ON SOCIAL SECURITY CONDUCTED BY THE NATIONAL TAXPAYERS UNION AND COMMISSIONED FOR THE WHITE HOUSE[,] UNITED STATES HOUSE OF REPRESENTATIVES [AND] UNITED STATES SENATE." The survey title, "OFFICIAL SURVEY ON SOCIAL SECURITY," remained unchanged.
 
 
 4
 After the SSA expressed its dissatisfaction with NTU's revised mailing and threatened enforcement action, NTU filed this lawsuit against the SSA in the district court. NTU alleged that § 1140 is facially invalid because it is unconstitutionally overbroad; § 1140 is unconstitutional as applied to NTU's revised mailing, which contains only legitimate, truthful representations; and the SSA's threat of enforcement amounts to a prior restraint of protected speech.
 
 
 5
 The district court granted the SSA's motion to dismiss the complaint. First, the court ruled that it lacked jurisdiction to consider NTU's pre-enforcement challenge to the constitutionality of § 1140. Relying on Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the district court held that the administrative review procedures described in the relevant statutes are the exclusive means for attacking § 1140 prior to its actual enforcement against NTU. The district court then dismissed NTU's prior restraint claim on the ground that the SSA's threatening enforcement action through administrative procedures was not so burdensome as to amount to a prior restraint. This appeal followed.[1]
 
 II.
 
 6
 We review de novo the district court's dismissal of NTU's complaint for lack of subject-matter jurisdiction. See Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 369 (4th Cir.2001). "In cases involving delayed judicial review of final agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent is `fairly discernible in the statutory scheme.'" Thunder Basin, 510 U.S. at 207, 114 S.Ct. 771 (quoting Block v. Community Nutrition Inst., 467 U.S. 340, 351, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984)). In determining whether Congress intended to preclude initial judicial review in this instance, we consider "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful judicial review." Id.
 
 A.
 
 7
 The Supreme Court held in Thunder Basin that a district court lacks subject-matter jurisdiction to entertain pre-enforcement challenges to the Mine Safety and Health Amendments Act of 1977, 30 U.S.C. § 801 et seq. ("Mine Act"). 510 U.S. at 202, 208, 114 S.Ct. 771. First, the Court noted that the statute "establishes a detailed structure for reviewing violations of any mandatory health or safety standard, rule, order, or regulation promulgated under the Act." Id. at 207, 114 S.Ct. 771. Under the Mine Act, a mine operator can challenge an adverse agency order before an administrative law judge, whose decision is reviewable by the Mine Safety and Health Review Commission. If the mine operator is dissatisfied with the Commission's ruling, it can challenge that ruling in the appropriate court of appeals, which has exclusive jurisdiction over such cases. Id. at 207-08, 114 S.Ct. 771. Moreover, while the Mine Act expressly authorizes district court jurisdiction over actions by the Secretary of Labor to enjoin habitual violations, it does not confer jurisdiction over actions by mine operators complaining about agency actions. Id. at 209, 114 S.Ct. 771.
 
 
 8
 Second, the Court concluded that the legislative history of the Mine Act suggests that "Congress intended to direct ordinary challenges under the Mine Act to a single review process." Id. at 211, 114 S.Ct. 771. This legislative history indicated that "enforcement was hobbled by a cumbersome review process" under the predecessor statute and that Congress expressly rejected a proposal for de novo review of agency actions in the district courts. Id.
 
 
 9
 Third, the Court concluded that the claims asserted in the complaint fell within the class of claims that Congress intended to be adjudicated within the review process described by the statute. Thunder Basin, 510 U.S. at 212, 114 S.Ct. 771. Thunder Basin's statutory claims fell squarely within the agency's expertise, and its constitutional due process claim could be decided by the Commission. Id. at 214-15, 114 S.Ct. 771. In any event, the Court noted that Thunder Basin's statutory and constitutional claims could be "meaningfully addressed in the [c]ourt of [a]ppeals." Id. at 215, 114 S.Ct. 771.
 
 B.
 
 10
 The statutory scheme at issue here resembles the Mine Act scheme in all relevant respects, and it too "establishes a detailed structure for reviewing violations" of the statute. Thunder Basin, 510 U.S. at 207, 114 S.Ct. 771. Section 1140 authorizes the SSA to impose civil monetary penalties of up to $5,000 (or $25,000 in the case of a broadcast or telecast) per violation against any person who misuses the phrase "Social Security" in violation of the statute. 42 U.S.C. § 1320b-10(b), (d). Section 1140 further provides a detailed procedure for assessment and review of such penalties. Id. § 1320b-10(c)(1) (incorporating most of the provisions of 42 U.S.C. § 1320a-7(a), which governs civil monetary penalties with respect to other violations concerning Social Security).
 
 
 11
 Under this procedure, the SSA may initiate an enforcement action within six years of the alleged violation by serving notice of such action as required by the Federal Rules of Civil Procedure. 42 U.S.C. § 1320a-7a(c)(1). The alleged violator is guaranteed an opportunity to be heard, with the right to be represented by counsel and the right to present and cross-examine witnesses. Id. § 1320a-7a(c)(2). Any party aggrieved by the ruling of the agency may petition the appropriate court of appeals to review that ruling; upon the filing of the record, the jurisdiction of the court of appeals is exclusive. Id. § 1320a-7a(e).
 
 
 12
 Like the Mine Act, the statute here makes no distinction between pre-enforcement and post-enforcement claims. See Thunder Basin, 510 U.S. at 208-09, 114 S.Ct. 771. Also like the Mine Act, the statute here specifically authorizes district courts to exercise jurisdiction over certain actions brought by the agency but not by private parties. 42 U.S.C. § 1320b-10(c)(2); 42 U.S.C. § 1320a-7a(k). Thus, the text and structure of § 1140 indicate Congress' intention that challenges to that statute be adjudicated, at least initially, in the administrative review process. Cf. Sturm, Ruger & Co., Inc. v. Chao, 300 F.3d 867, 873 (D.C.Cir.2002) (OSHA); Great Plains Coop v. CFTC, 205 F.3d 353, 355 (8th Cir.2000) (Commodity Exchange Act); Northeast Erectors Ass'n of BTEA v. Secretary of Labor, 62 F.3d 37, 39-40 (1st Cir.1995) (OSHA).
 
 
 13
 The Court in Thunder Basin consulted the legislative history of the Mine Act to confirm the conclusion it drew from the text and structure of the statute.[2] Although there is scant legislative history to consider specifically with respect to the substance of § 1140, the legislative history underlying the civil monetary penalties provision (incorporated by § 1140) shows that Congress specifically rejected a proposal allowing alleged violators to challenge final agency actions in trials de novo in district court. See Pub.L. No. 97-35, § 2105 (codified at 42 U.S.C. § 1320a-7a); H.R. Conf. Rep. No. 97-208, at 950 (1981), reprinted in 1981 U.S.C.C.A.N. 1010, 1312. This legislative history is similar to that in Thunder Basin and likewise suggests that Congress intended pre-enforcement challenges to § 1140 to be adjudicated in the first instance by the administrative agency rather than the district courts. See 510 U.S. at 211, 114 S.Ct. 771.
 
 
 14
 We further conclude that the claims asserted in this case are "of the type Congress intended to be reviewed within this statutory structure." Thunder Basin, 510 U.S. at 212, 114 S.Ct. 771. The Court in Thunder Basin noted that it might be appropriate to bypass administrative review in cases involving "claims considered `wholly collateral' to a statute's review provisions and outside the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review." Id. at 212-13, 114 S.Ct. 771 (internal citations omitted). Such is not the case here.
 
 
 15
 On appeal, NTU asserts only constitutional claims, attacking the substantive provision of § 1140 — the prohibition against certain uses of the phrase "Social Security" — as a violation of the First Amendment on its face and as applied. Although "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies," the Court in Thunder Basin noted that "[t]his rule is not mandatory" and concluded that a district court does not have jurisdiction to entertain an initial challenge to the constitutionality of the Mine Act. Id. at 215, 114 S.Ct. 771. The Court seems to have rested its conclusion on the fact that the plaintiff's constitutional claim could be meaningfully addressed by the court of appeals in due course. Id. In this case, even if the administrative agency elects not to decide the constitutional claims presented by NTU, this court can do so at the appropriate time. See Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 23-24, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) (citing Thunder Basin for the proposition that a court reviewing an agency determination "has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide"); Virginia v. United States, 74 F.3d 517, 523 (4th Cir.1996) (citing Thunder Basin for the proposition that "[t]here is simply no impediment to the adjudication of constitutional issues through petitions for direct review of final agency action in the circuit courts").[3]
 
 
 16
 "The limitation imposed here is channeling of initial review through the administrative process, not exclusion of judicial supervision." Eastern Bridge, LLC v. Chao, 320 F.3d 84, 90 (1st Cir.2003). NTU's constitutional claims are of the type Congress intended to be adjudicated in the statutory review process, and that process will give NTU a meaningful opportunity to litigate its constitutional challenge to § 1140. Accordingly, we conclude that NTU's claims must be adjudicated initially under the administrative review scheme established by Congress in the statute.
 
 III.
 
 17
 Because the administrative review procedures available here are nearly indistinguishable from those at issue in Thunder Basin, and because the claims asserted here are of the type Congress intended to be adjudicated, at least initially, through the administrative review scheme, the district court properly ruled that it lacked subject-matter jurisdiction over this case. The decision of the district court is therefore
 
 
 18
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 On appeal, NTU argues only that the district court erred by dismissing its constitutional challenge to § 1140. NTU does not seek to revive its prior restraint claim, and we do not address that claim here
 
 
 [2]
 In no way did the Court suggest, as NTU now argues, that the legislative history stands on equal footing with the text and structure of the statute or that specific legislative history is necessary to conclude that Congress intended to preclude initial judicial review. The Court concluded from the text and structure of the Mine Act that Congress intended to preclude initial judicial resolution of Thunder Basin's claims; the legislative history merely "confirm[ed] this interpretation" of the statuteThunder Basin, 510 U.S. at 207-09, 114 S.Ct. 771.
 
 
 [3]
 This is not a case in which the plaintiff challenges the validity of the agency's enabling statute in an action wholly independent of the agency's enforcement of a substantive provisionSee, e.g., Time Warner Entm't Co., L.P. v. FCC, 93 F.3d 957 (D.C.Cir.1996) (noting that the plaintiff's challenge to certain statutory provisions was "entirely independent of any agency proceedings, whether actual or prospective"). Rather, NTU brought this action in anticipation of imminent enforcement proceedings, and its arguments amount to defenses to enforcement of § 1140. Nor is this a case in which permitting the constitutional challenge in district court would be consistent with other statutory provisions authorizing suits in district court. See, e.g., Action for Children's Television v. FCC, 59 F.3d 1249 (D.C.Cir.1995) (permitting the plaintiff to bypass administrative review where the relevant statute authorized suits in district court to collect on a forfeiture order, such that the plaintiff's challenging the constitutionality of the forfeiture statute in defense against such a collection action was entirely consistent with the statutory scheme). NTU's challenge is aimed at the substantive provision of § 1140 — the prohibition against certain uses of the phrase "Social Security" — not the SSA's authority to impose civil monetary penalties for violation of that provision. In sum, NTU's complaint represents an impermissible attempt to evade the administrative review scheme established by Congress. Cf. Thunder Basin, 510 U.S. at 216, 114 S.Ct. 771; American Fed'n of Gov't Employees, AFL-CIO v. Loy, 367 F.3d 932, 936 (D.C.Cir.2004); Sturm, Ruger, 300 F.3d at 876; Great Plains Coop, 205 F.3d at 354-55; Northeast Erectors, 62 F.3d at 40.
 
 
 WILKINSON, Circuit Judge, concurring:
 
 19
 We do not have before us a pre-enforcement challenge to a statute that seeks to silence criticism of the operation of a government program. All that is at issue is a statute that forbids the impersonation of a federal agency by a private organization bent on sowing confusion among beneficiaries of a program and thereby thwarting the purposes it was intended to serve. In this context, Congress had unquestionable authority to adopt the administrative procedures that it did. Compare Mathews v. Eldridge, 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (emphasizing that the "nature of the claim being asserted and the consequences of deferment of judicial review" will often bear on whether district court jurisdiction is proper prior to final agency disposition).
 
 
 20
 I am thus happy to concur in Judge Shedd's fine opinion.