**AMERICAN TRUCKING ASSOCIATIONS, INC., et al., Plaintiffs,**

v.

**Robert REICH, et al., Defendants.**

**Civil Action No. 96–552(TPJ).**

United States District Court, District of Columbia.

Jan. 31, 1997.

---

Erika Z. Jones, Mayer, Brown & Platt, Washington, DC, Lynda Syrop Mounts, Daniel R. Barney, American Trucking Associations, Alexandria, VA, for American Trucking Associations, Inc., Federal Express Corp., United Parcel Service.

Suzanne Claire Nyland, U.S. Attorney's Office, Washington, DC, for Robert B. Reich, Joseph A. Dear.

Peter Alan Susser, Littler, Mendelson, Fastiff, Tichy & Mathiason, Washington, DC, for Food Distributors Intern., Nat. Beer

Wholesalers Ass'n, American Warehouse Ass'n.

## *MEMORANDUM AND ORDER*

JACKSON, District Judge.

Plaintiffs American Trucking Association, Inc. ("ATA"), United Parcel Service of America, Inc. ("UPS"), and Federal Express Corporation ("FedEx"), filed this action in March, 1996, for declaratory judgment and an injunction to prohibit the defendant Occupational Safety and Health Administration ("OSHA") of the United States Department of Labor from forcing businesses such as theirs to respond an OSHA survey form, entitled "Occupational Injury and Illness Report, 1995" (the "Survey"), by which OSHA expects to acquire data to make future enforcement decisions.[1]

The case is presently before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment, and plaintiffs' cross-motion for summary judgment.

### I.

The record reflects that OSHA has implemented what it refers to as a Data Collection Initiative ("DCI"), the objective of which is to identify particular workplaces experiencing disproportionately high rates of injury and illnesses. Beginning in February, 1996, OSHA mailed its Survey to some 80,000 business "establishments" pre-selected on the basis of industry group and size. OSHA defines a business "establishment" as a "single physical location where business is conducted or where services or industrial operations are performed." 29 C.F.R. § 1904.12(g)(1).

The Survey calls upon each recipient establishment to provide data on its average number of employees over the period specified, and the total number of hours its employees worked, as well as the job-related illnesses and injuries suffered by its employees in the calendar year 1995. For each responding establishment, OSHA's plan is to calculate an injury/illness incidence rate, thereby enabling it to determine whether to

---

1. Food Distributors International, the National Beer Wholesalers' Association, and the American Warehouse Association have filed a brief *amicus curiae* in support of plaintiffs.

target that establishment for agency enforcement or other action.

Aside from their concern that the information may be made public, plaintiffs' principal objection to the Survey appears to rest on the practical ground that it imposes an enormous clerical burden on them to comply. Based on OSHA's definition of "establishment," they assert, "many of ATA's members—FedEx and UPS among them—operate hundreds, if not thousands, of establishments." (Pl.s' Mot. for Summ. J., at n. 2.) Although such establishments are required by regulation to keep illness and injury logs, *see* 29 C.F.R. § 1904.2, no regulation exists requiring an establishment to maintain records on the numbers of people it employs and the hours they work. Consequently, plaintiffs say, assembling this information retrospectively is likely to be an onerous and costly task.

OSHA could, plaintiffs acknowledge, have adopted a regulation requiring the pertinent records to be maintained. See 29 U.S.C. § 657(c). It could also obtain the information (to the extent it is available at all) by way of an administrative subpoena to, or an on-site inspection of each designated respondent establishment. *See* 29 U.S.C. §§ 657(a)—(b). What OSHA *cannot* do, plaintiffs contend, is what its Survey purports to do, which is to make demand upon employers to assume the burden of compiling and reporting the data unsupported by an authorizing statute or regulation. Section 24(e) of the OSH Act provides:

> On the basis of the records made and kept pursuant to section 657(c) of this title, employers shall file such reports with the Secretary *as he shall prescribe by regulation,* as necessary to carry out his functions under this chapter.

29 U.S.C. § 673(e)(emphasis added). Had OSHA proceeded in accordance with its statutory mandate, it would have been obliged to propose an appropriate regulation to implement its DCI, and plaintiffs would have been afforded an opportunity to participate in the requisite notice-and-comment period to oppose, or at least to ameliorate it.

The Survey, as unilaterally written by OSHA, however, speaks with the force of a command. On the cover page, immediately below the title, it states: "Public Law 91–596 requires you to complete this form." Only five sentences into the introductory instructions on page two, it declares:

> Your participation in this data collection is mandatory under Section 24 of Public Law 91–596, the Occupational Safety and Health Act of 1970. Failure to properly maintain records and file this report as required may result in issuance of citations and assessment of penalties as provided for in Sections 9, 10, and 17 of the Act.

Under the rubric, "Who must complete this form?," the Survey declares: "All establishments that receive this form must complete and return it within 30 days, even if they had no occupational injuries and illnesses [in 1995]." (Ex.[s] in Supp. of Pl.s' Mot. for Summ. J. at Ex. 1.)

Those statements are false. Neither statute nor regulation purports to render the completion and return of the Survey mandatory, and OSHA admits it.[2]

OSHA argues, however, that this case should nevertheless be dismissed for lack of jurisdiction: The agency action challenged is merely a preliminary step in an on-going investigative activity, not the "final agency action" made amenable to judicial review under 5 U.S.C. § 704. Moreover, it says, even were the agency action final, it is not ripe for judicial intervention because plaintiffs have suffered and will suffer no "immediate, direct, and significant" harm in absence of judicial intervention at present. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 152–53, 87 S.Ct. 1507, 1517–18, 18 L.Ed.2d 681 (1967). If an establishment ignores or refuses to return the Survey, OSHA may or may not choose to subpoena the requested

---

2. OSHA states that it had no intention of misleading employers into believing that punitive measures would be taken against those recalcitrant establishments failing to return a completed Survey form. To the extent it did so, it says, it was an "unintended drafting error." (Def.s' Reply to Pl.s' Mem. in Opp'n to Def.s' Mot. to Dismiss, at 4.) The Court is informed, however, that OSHA agents continue to make threatening follow-up phone calls to delinquents. (Pl.s' Supplemental Mem. in Supp. of Mot. for Summ. J. at 2–3 and Ex. 18.)

information or to conduct an on-site records inspection. If and when it does, the employer can resist, thus forcing OSHA to proceed by way of an enforcement order or warrant. Only then, says OSHA, would the matter be ripe for review.[3]

Finally, OSHA observes that most recipients of the Survey have already responded. As to those establishments, this controversy is moot, whether they responded voluntarily or because they believed they were legally obligated to do so.

## II.

■ This Court concludes that, for purposes of the relief sought by plaintiffs, the Survey itself *is* "final agency action" and thus ripe for review. *See Ciba–Geigy Corp. v. U.S. Environmental Protection Agency,* 801 F.2d 430, 435–39 (D.C.Cir.1986) (agency's warning of possible cancellation of pesticide registration upon failure to amend product label without hearing required by statute is ripe for judicial review). As another judge of this district court has recently observed in a similar context:

> Whether [an agency] has officially adopted a final policy . . . is not determinative. In the context of a ripeness inquiry, it is the *effect* of the agency's conduct which is most important in determining whether an agency has adopted a final policy. And this case illustrates why this must be so: If an agency's own characterization of the finality of its policy were determinative, that agency could effectively regulate industry without ever exposing itself to judicial review. A powerful agency . . . could achieve this result through the simple expedient of 1) never formally declaring the policy to be 'final,' and 2) threatening (but never actually initiating) enforcement procedures against companies which failed to comply with the agency's *de facto* policy.

*Washington Legal Foundation v. Kessler,* 880 F.Supp. 26, 34 (D.D.C.1995) (emphasis in original). Even with respect to those establishments having already submitted a completed survey, any argument that plaintiffs' claims are moot fails under the Supreme Court's reasoning in *Church of Scientology of California v. United States,* 506 U.S. 9, 13, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1992) ("When the Government has obtained such materials as a result of an unlawful summons, . . . a court can effectuate relief by ordering the Government to return the records.").

■ Having found that this case is ripe for review, the Court concludes as well that plaintiffs are entitled to the declaratory judgment they seek, because the imperious tenor of the Survey's introductory instructions, accompanied by minatory references to sanctions, not to mention the follow-up letters and phone calls, finds no warrant in Section 24 of "Public Law 91–596" or anywhere else. The Secretary of Labor, i.e., OSHA, must promulgate a regulation before purporting to command employers to file reports like the one at issue here.

Salutary as its motives may be, OSHA has attempted to accomplish its data collection by a device that avoids the rulemaking process, thereby silencing any industry opposition and saving it the cost, delay, and uncertainty associated with such proceedings.[4] Because the agency's action was taken "without observance of procedure required by law," it violates the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(D).

It is, therefore, this 31st day of January, 1997,

ORDERED, that defendants' motion to dismiss or, in the alternative, for summary judgment is denied; and it is

FURTHER ORDERED, that plaintiffs' motion for summary judgment is granted in part; and it is

FURTHER ORDERED, that the parties appear before this Court on February 13,

---

3. OSHA gives assurance that if it does opt to proceed either by subpoena or inspection, it will do so simply because the establishment was originally selected to participate in the DCI, not, as plaintiffs suspect, because the establishment refused to respond to the Survey.

4. It also spares OSHA the same burdens entailed in using the information-gathering methods it *is* authorized to employ, *viz.,* subpoenas and inspections, by shifting them all to employers.

1997, at 9:30 a.m. for a status conference to determine the appropriate form of relief.