**MUNICIPALITY OF SAN JUAN, et al., Plaintiffs**

v.

**HUMAN RESOURCES OCCUPATIONAL DEVELOPMENT COUNCIL, et al., Defendants.**

Civil No. 04–2123(SEC).

United States District Court, D. Puerto Rico.

May 20, 2005.

Eric R. Ronda–Del–Toro, Johanny Martinez, Juan B. Soto–Balbas, Ricardo Pascual–Villaronga, Mercado & Soto, San Juan, PR, for Plaintiffs.

Luis E. Vazquez–Rodriguez, Cruz Niem-
iec & Vazquez, San Juan, PR, for Defen-
dants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendants'
motion to dismiss pursuant to Fed.R.Civ.P.
12(b)(1) and 12(b)(6) (Dockets ## 11 &
15). Plaintiffs timely opposed Defendants'
motion (Docket # 17) and Defendants re-
plied (Docket # 22). After carefully re-
viewing the parties' filings and the applica-
ble law, for the reasons set forth herein,
we find that Defendants' motion must be
**GRANTED.**

### Procedural Background

Plaintiffs, the Municipality of San Juan
and its Mayor, Jorge A. Santini–Padilla,
filed the instant suit in the Common-
wealth's courts requesting injunctive relief
against Defendants, the Human Resources
Occupational Development Council
("HRODC"), the Department of Labor and
Human Resources ("DOL"), Román Velas-
co–González, Secretary of the DOL, and
the Commonwealth of Puerto Rico.[1] Per
Plaintiffs' allegations, this action arose out
of the HRODC's decision to audit the San
Juan Puerto Rico International Fashion
Center pursuant to the provisions of the
Federal Workforce Investment Act
("WIA"), 29 U.S.C. §§ 2801 *et seq.* Plain-
tiffs contend that Defendants' monitoring
and audit procedures of the Municipality of
San Juan as a designated Local Area for
the participation and allocation of funds
under the WIA have denied them of due
process of law and have been discriminato-
ry on the basis of political affiliation in
violation their constitutional rights secured
by the United States' and Commonwealth
of Puerto Rico's constitutions. Plaintiffs
request that the Court order: (1) Defen-
dants to provide due process of law to
Plaintiffs prior to issuing any determina-
tion affecting their proprietary interest in
the WIA funds they presently receive and
those that may be assigned in the future;
(2) that all proceedings before the HRODC
be stayed until Defendants agree to afford
Plaintiffs due process of law[2]; (3) Defen-
dants to abstain from divulging confiden-
tial information and to cease and desist
from disclosing conclusions that have not
been analyzed pursuant to the process of
law due to Plaintiffs; (4) that the assign-
ment of funds to the Training and Employ-
ment Program of the Municipality of San
Juan continues to be the same as the
present assignment[3]; (5) Defendants to
cease and desist from making determina-
tions, recommendations, and statements
motivated by political discrimination
against Plaintiffs; and (6) any other relief
applicable under the law.

Subsequently, Defendants sought re-
moval of this matter claiming that the
Court has original jurisdiction since it
arises under a federal law, the WIA, and
necessarily involves the interpretation of
its provisions and applicable regulation

---

1. Although Plaintiffs assert in their complaint
that damages are claimed pursuant to Articles
1802 and 1803 of the Puerto Rico Civil Code,
31 L.P.R.A. § 5141 and § 5142, no such relief
is requested (Docket # 6, Attachment 2).

2. There being no substantial justification to
enjoin the local proceedings initiated by
Plaintiffs and absence of irreparable harm,
said request was denied on December 23,
2004 (Docket # 19).

3. This request is inapposite. Pursuant to the
procedures set forth by the WIA, Plaintiffs
will continue to receive funds until review is
finalized. That is, until the Court of Appeals
issues its ruling or the time to appeal expires
without any action. 20 C.F.R.
§ 667.650(a)(1).

(Docket # 1). Defendants then moved to dismiss Plaintiffs' action for failure to exhaust administrative remedies (Docket # 11). Plaintiffs opposed averring that the case involves exceptions to said doctrine (Docket # 17) and Defendants replied (Docket # 22).

## Standard of Review

In general terms, a defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). In this type of jurisdictional challenge, "the standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely, the court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff." *Pejepscot Indus. Park v. Maine Cent. R.R.*, 215 F.3d 195, 197 (1st Cir.2000); *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 257 (N.D.Ill., 1992). *See also Hart v. Mazur*, 903 F.Supp. 277 (D.R.I.1995) ("Motions under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review.") However, once the jurisdictional challenge has been raised, the plaintiff carries the burden of demonstrating the existence of the Court's jurisdiction. *P.R. Tel. v. Telecom. Regulatory Bd.*, 189 F.3d 1, 7 (1st Cir.1999).

■ In assessing whether dismissal is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.*, 851 F.2d

513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993).

## Applicable Law and Analysis

In their motion to dismiss, Defendants assert that Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction in as much as Plaintiffs have failed to exhaust the administrative remedies provided by the WIA Regulation, Subpart F, Grievance Procedures, 20 C.F.R. § 667.600. Said proceedings have commenced and have not concluded. Thus, Defendants aver that there is no final determination to be reviewed by the Court. Moreover, in the event of a final determination, said determination would be reviewable by the Court of Appeals and not the District Court as set forth by the WIA and its regulations. 29 U.S.C. § 2937(a)(1); 20 C.F.R. § 667.850.

■ The doctrine of exhaustion of administrative remedies is well established in federal and local jurisprudence. It "provides that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy

has been exhausted.'" *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 774 (1st Cir.1981)(*quoting Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). This is so because exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. 140, 146, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

■ In *Ezratty,* the First Circuit stressed the important interests that exhaustion serves as noted by the Supreme Court in *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

It allows the agency to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes, all before a court will intervene. Insofar as specialized administrative understanding is important, the doctrine thereby promotes accurate results, not only at the agency level, but also by allowing more informed judicial review. By limiting judicial interruption of agency proceedings, the doctrine can encourage expeditious decision making. Insofar as Congress has provided that an agency will decide a matter in the first instance, to apply the doctrine normally furthers specific Congressional intent. And, as a general matter, the doctrine promotes a sensible division of tasks between the agency and the court: litigants are discouraged from weakening the position of the agency by flouting its processes, while court resources are reserved for dealing primarily with those matters which could not be resolved administratively. Thus, the doctrine serves interests of accuracy, efficiency, agency autonomy and judicial economy.

*Ezratty,* 648 F.2d at 774. Moreover, "[t]he interest in avoiding judicial involvement is heightened [in cases such as this one] where the plaintiffs raise a constitutional challenge to agency action .... where a controversy may be resolved on some independent nonconstitutional ground...." *Ticor Title, Inc. v. F.T.C.,* 814 F.2d 731 (D.C.Cir.1987).

■ Congressional intent is of paramount importance to the application of the doctrine. *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081. Consequently, courts have differentiated between permissive and mandatory administrative remedies, stating that "[w]hen Congress explicitly requires that administrative remedies must be pursued before seeking judicial relief, litigants must obviously follow that mandate" but " 'where Congress has not clearly required exhaustion, sound judicial discretion governs.' " *Trafalgar Capital Assocs., Inc. v. Cuomo,* 159 F.3d 21, 36 (1st Cir.1998) (*quoting McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081). However, when exhaustion is not explicitly required, courts must give the "appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard." *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081. Therefore, exhaustion principles must be fashioned "in a manner consistent with congressional intent and any applicable statutory scheme." *Id.* at 144.

The WIA and its regulation establish a comprehensive administrative scheme for monitoring and audit processes as well as for the resolution of grievances and claims resulting from audit proceedings such as the present one. Subparts E, F, and G of the WIA regulations set forth the procedures for the resolution of findings from monitoring and oversight reviews, grievances and complaints, and sanctions and corrective action, respectively. 20 C.F.R. Part 667. Section 667.500 of Subpart E

establishes that "[t]he Secretary uses the DOL audit resolution process" and that "[a] final determination issued by a Grant Officer under this process may be appealed to the DOL Office of Administrative Law Judges." 20 C.F.R. § 667.500(b)(2–3). Pursuant to Part F, each WIA recipient, the HRODC in this case, "must establish and maintain a procedure for grievances and complaints." 20 C.F.R. § 667.600. However, certain procedures are mandated. Section 667.600 contains a list of procedures that the local area must provide, including: (1) "[a] process for dealing with grievances and complaints from participants"; (2) "[a]n opportunity for an informal resolution and a hearing to be completed within 60 days of the filing of the grievance or complaint"; and (3) "[a]n opportunity for a local level appeal to a State entity when ... [e]ither party is dissatisfied with the local hearing decision." *Id.* The HRODC avers that it has those proceedings and that they are currently being followed in the instant controversy.[4] *See* Dockets ## 11 & 22.

In the present case, the final determination by the HRODC will be reviewed by a Grant Officer, an Administrative Law Judge, and by the Administrative Review Board, if requested. Thereafter, the determination may be reviewed by the Court of Appeals for the First Circuit pursuant to Section 2937 of the WIA. Said section establishes that any final order of the Secretary of the DOL directing corrective action or imposing sanctions for violating WIA provision(s), may be reviewed by the "United States Court of Appeals having jurisdiction over the applicant or recipient of funds involved, by filing a review petition within 30 days after the date of issu-

ance of such final order." 29 U.S.C. § 2937(a)(1).

Given the existence of this ongoing administrative review, including the option of judicial review by the Court of Appeals, Defendants argue that the case should be dismissed insofar as Congress has provided for initial agency determination. Thus, Defendants argue, requiring completion of the administrative process would further Congressional intent.

In turn, Plaintiffs do not contest the applicability of the exhaustion doctrine, but aver that their case falls under two exceptions to the doctrine: (1) futility of the agency's administrative proceedings and (2) clear violation of a constitutional right due to the agency's involvement. We disagree. Let us explain.

■ Plaintiffs allege that Defendants have acted in a manner that denotes their predetermination to find that the Municipality is at fault in the handling of federal funds. In support, Plaintiffs stress that they have never received the preliminary evaluation report, despite repeated requests for the same, and that they have not had the opportunity to be heard with regard to the same. Plaintiffs emphasize that the recommendation that an independent audit firm be hired to perform a second intervention was based on said preliminary evaluation after the first intervention. Plaintiffs also allege that the proceedings have been plagued with irregularities, to wit, that they were not notified of the date and time of the audit, that the contracted auditor requested, but never collected, numerous documentation in order to prepare the pre-accorded proceedings report, and that the report was incomplete since it was prepared without

---

4. In their reply Defendants informed that Plaintiffs failed to attend to the informal hearing scheduled for December 27, 2004. The hearing was scheduled on December 7, 2004 (Docket # 22). Plaintiffs unsuccessfully requested a continuance of the same by letter dated December 22, 2004.

the required complete "field samples" and requested documentation. Therefore, Plaintiffs aver, said acts, among others, evince that the HRODC is predetermined to find Plaintiffs at fault with the regulations pertaining to the allocation of WIA funds and deny them due process of law.

As to Plaintiffs' contention that they have been deprived of an opportunity to be heard, Plaintiffs requested and were granted an informal hearing. However, they failed to attend the informal hearing after their eleventh hour request for a continuance based on supposed calendar conflicts was denied. Moreover, as to notification of reports, by letter dated July 7, 2004 Plaintiffs acknowledge receipt of the pre-Agreed Procedures Report carried out by the accounting firm (Docket # 8, Exhibit 6). Again, on July 8, 2004, the HRODC sent Plaintiffs the preliminary report of the Pre–Agreed Procedures carried out by the CPA firm (Docket # 8, exhibit 7). Said letter specified that the Local Area should answer the subject matters raised within the next thirty (30) days of receipt. Then, by letter dated August 26, 2004, after several exchanges of correspondence between the parties, the HRODC clarified that there was only one Preliminary Report which was the result of the intervention started by the HRODC and completed by the CPA firm (Docket # 8, Exhibit 11). On that same letter, the HRODC granted the Municipality's request for an extension of time to answer the findings included in the Preliminary Report of Agreed Procedures, warning the Municipality that failure to answer would result in the issuance of a Final Report with the corresponding resolution process. Consequently, after the expiration of the term, and without response from the Municipality, the HRODC issued its Final Report (Docket # 8, Exhibit 12). The Municipality responded to said letter stating that the short extension granted was insufficient, that its requests

for discussions were ignored, and restating its concerns regarding the procedures followed by the HRODC. Then, since the Municipality did not respond to the Final Report, on October 20, 2004 the HRODC notified the Municipality that it had issued an Initial Determination of the audit (Docket # 11, Attachment 2). Thereafter, the Municipality requested an informal hearing as to the Initial Determination. The HRODC granted said request and scheduled the same for December 27, 2004 (Docket # 15, Attachment 1). As previously mentioned, the Municipality failed to attend said meeting.

 As stated by the First Circuit in *Ezratty*, exhaustion of administrative remedies is not required when agency proceedings are futile and only "delay the ultimate question." *Ezratty*, 648 F.2d at 774. Notwithstanding the strained exchanges between the Municipality and the HRODC, we cannot assume, without more, that exhaustion of the administrative remedies would be futile. This conclusion is buttressed by the comprehensive multitiered scheme of review provided by the WIA. Moreover, Plaintiffs bear the burden of establishing the applicability of an exception to the exhaustion requirement. *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir.2000)(*citing Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). Since Plaintiffs have proffered no convincing evidence to the effect that further agency proceedings would be futile, we cannot reach such a conclusion, particularly when Plaintiffs themselves have disregarded the established proceedings. Plaintiffs' "decision to boycott the administrative process does not compel this Court to interrupt what is an ongoing process towards a final resolution." *City of New Orleans v. U.S. Dept. of Labor*, 825 F.Supp. 120 (E.D.La.1993)(dismissing suit for failure to exhaust administrative reme-

dies under the JTPA). The futility exception is reserved for cases in which the plaintiffs will "receive no review at all, [ ] where the administrative process is fundamentally flawed because of a pattern and practice of administrative agency abuse, [ ] where the agency's behavior is utterly lawless." *Eastern Bridge, LLC v. Chao*, 320 F.3d 84, 89 (1st Cir.2003). Furthermore, as noted by the *Ticor* Court,

> I think it unwise to embrace an exception to the exhaustion doctrine that would permit interruption of ongoing agency proceedings whenever a litigant raises a non-frivolous challenge to the legitimacy of those proceedings. Such an exception would encourage litigants to bypass the orderly processes of administrative agencies and would intolerably interfere with the ability of those agencies to perform the tasks assigned to them by Congress. The principal countervailing interest in favor of immediate judicial review is the litigant's interest in not being forced to defend itself in an allegedly unauthorized proceeding. That interest, however, is far less weighty than the court's interest in conserving its judicial resources and discouraging the flouting of administrative procedures. The litigant, of course retains its right to challenge the final agency determination on the ground that the agency acted outside its statutory authority or in violation of the Constitution.

*Ticor Title, Ins.*, 814 F.2d at 741–42.

■■■■ Having found absence of futility in the instant case, we consider Plaintiffs' argument that their inclusion of constitutional claims, to wit, that they have been denied due process and subjected to political discrimination, exempts them from having to exhaust administrative remedies. However, as expressed by the D.C. Circuit Court, "the fact that the appellants raise both constitutional and nonconstitutional claims does not in itself affect the application of the exhaustion doctrine." *Andrade v. Lauer*, 729 F.2d 1475 (D.C.Cir.1984). As previously resolved in this District, "[m]erely raising a constitutional issue in its complaint for declaratory judgment, when full appellate review of the administrative proceedings is available and in the absence of any extenuating circumstances, is insufficient to give the district court jurisdiction over the subject matter in the face of the well established doctrine of exhaustion of administrative remedies." *Colon–Collazo v. Cordero–Santiago*, 698 F.Supp. 30 (D.Puerto Rico 1988).

■■■■ The same argument raised by Plaintiffs was previously raised before and rejected by the First Circuit in *Eastern Bridge, LLC*, 320 F.3d 84. The plaintiffs in *Eastern Bridge* had brought their claims directly to the district court. The district court in turn dismissed the complaint for lack of subject matter jurisdiction. Dissatisfied, the plaintiffs appealed, averring that they did not have to exhaust administrative remedies because they had raised constitutional claims. The First Circuit disagreed, holding that the "invocation of constitutional authority, without more, cannot breathe life into a theory already pronounced dead by the Supreme Court in binding precedent."[5] *Id.* at 91. Quoting the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the First Circuit continued to state, as is true in the instant case, that "[a]t the termination of administrative review, plaintiffs' constitutional claims 'can be

---

**5.** The First Circuit also dismissed the plaintiffs' request for an injunction against the use of information determining that said alternative prayer for relief could not afford them with jurisdiction where the primary theory had failed.

meaningfully addressed in the Court of Appeals.'" *Id.* Thus, if Plaintiffs in the instant case are dissatisfied with the outcome of the administrative process, they may raise their regulatory and constitutional claims before the First Circuit Court as provided for by the WIA's regulatory scheme. 29 U.S.C. § 2937(a)(1); 20 C.F.R. § 667.850.

The Fourth Circuit reached the same conclusion regarding exhaustion in a suit brought by a recipient of funds under the Comprehensive Employment Training Act ("CETA"), one of the WIA's predecessor statutes. *Eastern Band of Cherokee Indians v. Donovan,* 739 F.2d 153 (4th Cir. 1984). The Fourth Circuit affirmed the district court's dismissal of plaintiff's action, including its due process claim, because the plaintiff had failed to exhaust its administrative remedies. In doing so, the Circuit Court made reference to the CETA's administrative remedies and its multi-tiered system of review, determining that the controversy over the CETA funding seemed "particularly suitable for internal resolution" and that "it seems clear from the language ... that Congress intended judicial review to occur in the court of appeals *after* the Secretary's action upon such grievances." *Id.* at 157.

The same conclusion was reached previously in this District in an action against the CETA program administrator for violations of rights under the CETA and the Fourteenth Amendment. *Colon Collazo v. Cordero–Santiago,* 698 F.Supp. 30 (D.P.R. 1988). The District Court dismissed the complaint, noting that exhaustion was particularly appropriate when it could eliminate the necessity of deciding the constitutional questions and of "particular force where the interlocutory order sought to be reviewed relates to the agency's case-handling procedures." *Id.* at 34. We find this case to be particularly persuasive.

Although not mentioned by Plaintiffs, we feel that we should address case law from this District in which the court has retained subject matter jurisdiction absent exhaustion of administrative remedies under the WIA. *Torres Ramos v. Consorcio De La Montana,* 286 F.Supp.2d 126 (D.P.R.2003); *Delgado Greo v. Trujillo,* 270 F.Supp.2d 189 (D.Puert Rico 2003); *Lugo Torres v. Torres Maldonado,* 257 F.Supp.2d 477 (D.Puerto Rico 2003)(JTPA); *Borrero–Rodriguez v. Montalvo-Vazquez,* 275 F.Supp.2d 127 (D.Purto Rico 2003). However, all of said cases involved Section 1983 actions for political discrimination filed by **former employees of WIA fund recipients** allegedly dismissed because of their political affiliation.

This case is distinguishable. First, this is not the case of a suit brought by a terminated employee of a WIA participant against his or her former employer alleging that he or she was terminated for discriminatory reasons. This is a suit brought by a WIA funds recipient against the funds administrator. Second, administrative proceedings in this case have already begun. Third, potential sections against Plaintiffs are yet to materialize in an actual administrative order issued against them. Fourth, completion of administrative review may render Plaintiffs' constitutional claims moot. Fifth, Plaintiffs are not deprived of a remedy because judicial review remains available after the DOL issues a final order. *See Goya de P.R., Inc., v. Herman,* 115 F.Supp.2d 262, 268 (D.P.R.2000)(citing said factors in support of its conclusion that administrative remedies must be exhausted despite the presence of constitutional claims). Thus, we find that "ordinary principles of exhaustion require us to defer to an administrative process that is already in motion." *Eastern Bridge LLC,* 320 F.3d at 92 (*citing Sturm, Ruger & Co. v. OSHA,* 186 F.3d 63, 64–65 (1st Cir.1999)). When Con-

gress provides for an elaborate scheme for remedies and review, courts "should not be anxious to allow a circumvention of that process absent extraordinary circumstances." *Consortium of Cmty. Based Orgs. v. Donovan,* 530 F.Supp. 520, 531 (E.D.Ca.1982). No such circumstances are present here.

Moreover, Defendants challenge, and the Court questions, the viability of Plaintiffs' constitutional claims. Plaintiffs' political discrimination claim rests on their assertion that Co-plaintiff Mayor of San Juan is affiliated to the New Progressive Party and because of that, the Municipality of San Juan has been targeted and has received disparate treatment in relation to other municipalities. In addition, Defendants aver that Plaintiffs do not have a property interest over the WIA funds. This is yet another obstacle faced by Plaintiffs. *See Eastern Band of Cherokee Indians,* 739 F.2d at 159 (holding that "[s]ince the Tribe's allegations of constitutional violations do not merit meaningful consideration, the district court was without jurisdiction to entertain them.").

Finally, we note that even if we were to consider Plaintiffs' request for injunctive relief, this Court cannot grant Plaintiffs prospective equitable relief under the WIA. *Narragansett Indian Tribe of R.I. v. Chao,* 248 F.Supp.2d 48, 51 (D.R.I.2003)(*citing United Urban Indian Council, Inc. v. U.S. Dept. of Labor,* 31 Fed.Appx. 627, 2002 WL 442378 (10th Cir. 2002)).

### Conclusion

For the reasons set herein, Defendants' motion to dismiss is **GRANTED** and the above-captioned action will be **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**